## Stone & Downer Co. v. United States (No. 483).[1]

1. "Fit Only for Such Use" Defined.

The phrase "fit only for such use" means fit in a commercial sense; but whether an article must be held fit for a certain use, if when blended with other articles it becomes so fit, is a question now reserved.

2. Dressing Oil Distilled from Grease.

A dressing oil distilled from grease or degras being found by the Board of General Appraisers to be fit for other purposes than for dressing or stuffing leather, the evidence being conflicting, this finding will not be disturbed, and the importation was dutiable under paragraph 3, tariff act of 1897.—McKerrow Co., Abstract 6179 (T. D. 26312).

### United States Court of Customs Appeals, April 17, 1911.

Transferred from United States Circuit Court, District of Massachusetts, Abstract 21485 (T. D. 29877).

[Affirmed.]

Searle & Pillsbury (Wm. E. Waterhouse of counsel) for appellants.

D. Frank Lloyd, Assistant Attorney General (Frank L. Lawrence on the brief), for the United States.

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Montgomery, Presiding Judge, delivered the opinion of the court:

The importation which is the subject of the present controversy consists of oil known as a dressing oil distilled from wool grease or degras, the principal use of which is for dressing or stuffing leather. It was assessed for duty under paragraph 3 of the act of 1897, which reads:

Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, twenty-five per centum ad valorem.

It is claimed to be free of duty as an oil commonly used in stuffing leather under paragraph 568 of said act, which reads:

Grease and oils (except fish oils), such as are commonly used in soap making or in wire drawing, or for stuffing or dressing leather, and which are fit only for such uses, and not specially provided for.

It is further claimed alternatively to be dutiable at one-half cent a pound as wool grease under paragraph 279 of said act, which reads:

Tallow, three-fourths of one cent per pound; wool grease, including that known commercially as degras or brown wool grease, one-half of one cent per pound.

As the record shows beyond question that the oil in question is a distilled oil and advanced beyond ordinary wool grease, we think the claim under paragraph 279 of the act is not entitled to prevail. Indeed, it appears not to be insisted upon by counsel in their brief.

The principal question is whether this oil, being chiefly used for dressing and stuffing leather, is here shown to be fit only for such

[1] Reported in T. D. 31533 (20 Treas. Dec., 829).

use, and this is a question of fact. Unquestionably the term "fit only for such use" means fit in the commercial sense. Jessop & Moore Paper Co. v. Cooper (46 Fed. Rep., 186); White v. United States (69 Fed. Rep., 93); and United States v. Colby & Co. (153 Fed. Rep., 883).

We do not determine either in this case that it is sufficient to justify holding that an article is fit for a certain use to find that it may, by blending with other articles, become so fit. We neither affirm nor negative that proposition, as we do not deem it necessary to do so in order to reach a conclusion in the present case.

The evidence in this case is conflicting, but after a full hearing the Board of General Appraisers found that the oil involved is in all particulars similar to that which is the subject of the board's abstract decision 6179 (T. D. 26312). In that case it was found that the oil involved was suited for wool dressing, and also fit to be used as a lubricating oil, and it was held therefore to be dutiable under paragraph 3, above quoted.

It is urged in the brief of counsel for appellant that this result was reach by confusing this oil with that in the McKerrow case (T. D. 26312), and it is pointed out that the attempt on the part of the Government to show by direct proof that this oil was of the same character as that involved in that case failed, as the Government failed to produce samples of the oil in the McKerrow case for comparison with that here involved.

We think that counsel has misapprehended the attitude of the Board of General Appraisers. There is nothing to indicate that the board in determining this case considered the evidence which was stricken from the record. All that the opinion in the present case does indicate is that upon a consideration of the testimony of the chemists and dealers in oil of the character submitted in this case the board found that it was substantially the same in character as the oil described in the McKerrow case. This is far from saying that they took into account the testimony given in the McKerrow case, which would of course have been improper.

Turning to the opinion in the McKerrow case, we find that the oil there involved showed a presence of 80.96 per cent to 96 per cent of unsaponifiable matter. The testimony of the importer's chemists in the present case shows the presence of saponifiable matter to the extent of 10.7 per cent, whereas the testimony of the Government's chemist shows the presence of but 5 per cent of saponifiable matter. Just how this difference may be accounted for the record does not disclose. But there was testimony tending strongly to show that the oil in question was entirely suitable for lubricating purposes, and there was also testimony tending to show that it was suitable for use by textile manufacturers for dressing wool, and that it was suitable for

use as a cordage oil and in batching of rope stock. This testimony was not uncontradicted, and it has become necessary to thoroughly examine the record in the case for the purpose of determining the question of fact.

To attempt to quote from the testimony of the numerous witnesses would extend this opinion beyond reasonable limits. It will suffice to say that in giving the conclusion of the board the consideration to which it is entitled in view of their better opportunity to judge of the testimony, we are unable to say in the present case that within the rule established by this court in United States *v.* Riebe, *supra,* p. 19 (T. D. 30776), the importer has made a case which justified us in setting aside the findings of the board. The case may be a close one on its facts, but we incline to the view that independent of any presumption of the correctness of the finding of the board, the preponderance of the evidence is with the Government.

It follows that the decision of the Board of General Appraisers should be *affirmed.*

SMITH, BARBER, and DE VRIES, Judges, concur.